NOLAN, *Appellant*, v. SHICKLE.

**Contributory Negligence.**   If on the plaintiff's evidence, in an action to recover damages for injuries alleged to have been sustained through the negligence of the defendant, it clearly appears that the plaintiff was himself guilty of carelessness or negligence, which contributed directly to produce the injury he complains of, he cannot recover, and the court should so instruct the jury.

*Appeal from St. Louis Court of Appeals.*

*Marshall & Barclay* for appellant.

*T. A. & H. M. Post* for respondent.

HENRY, J.—This suit was instituted by plaintiff in the circuit court of St. Louis county to recover damages for a personal injury to plaintiff alleged to have occurred in consequence of the negligence of defendant.   There is no dispute about the facts, and the case is to be determined on the testimony for the plaintiff and an instruction given by the court.

Plaintiff was employed by defendant, and at the time of the accident was engaged in putting up an iron fence around a circular gallery of the Bessemer Iron Furnace,

in East Carondelet. The fence was made of sheet iron plates about four feet high riveted to a frame work of angle iron. The platform or scaffolding on which plaintiff stood, while at this work, consisted of a plank 14 or 16 feet long, 14 inches wide and 2 inches thick. The structure of the gallery and scaffolding is represented by the following diagram:

The space within the inner circle represents the cupola of the furnace, which extends above the gallery. The gallery is six or eight feet wide, and on the same level with a plank bridge, "B," connecting the rostrum with the eastern furnace. "A" is an extension of the gallery. The plank was the scaffolding. It was laid across two supports of scantling, one end resting on the projection, "A." The plane of the bridge, gallery, projection and scaffold was about 65 feet above the ground. The plank forming the scaffold was laid on the scantling supports, "C," "C," which were fastened to the under side of the gallery by ropes passing through holes made in the floor of the gal-

2—69

lery. The plank had an inclination of some inches caused by the support next the bridge being six or eight inches lower than the level of the projection upon which one end of the plank rested. The outer line of the furnace and projection was to be surrounded by a sheet iron fence, four feet high, and on top of this was to be placed the angle iron. When plaintiff was put to work on the angle iron, the sheet iron fence had been set up and partly riveted together along the southeast quarter of the circle as far as the point where the projection "A" begins. Plaintiff began to put on the angle iron at a point where the side of the bridge toward the projection meets the furnace, and worked along the line to the projection. He commenced about four o'clock p. m., on the 12th day of October, and reached the projection with his work about four o'clock p. m. the next day. The sheet iron fence was not yet up on the projection, and when plaintiff had reached the corner of the projection with his work, he went upon the scaffold to fix the angle iron and it went down with him, and by the fall he was very seriously injured. He had been on the scaffold often on that day, and the day before, while at work as above stated. He never examined the plank particularly. About one o'clock p. m., on the day of the accident, about three hours before it occurred, he let his pencil fall on the projection and it rolled under the edge of the plank, and he then observed that the under side of the plank, for about five or six inches from the end resting on the projection, was tapered or beveled off like a wedge. The platform of the projection was iron, and the plank lapped over it two or three inches beyond the bevel. He supposed, before he fell, that it was nailed to the scantling support next the bridge, but did not go that far out on the scaffold at any time. The plank did not rest on the support next the projection, but only on the projection and the scantling support next the bridge, which plaintiff testified was six or eight inches lower.

It is difficult to understand how the plank could rest

upon the projection platform at one end and at the other on a support six or eight inches lower than the projection or the middle support, unless it were warped into a curve at the point over that support. If the plank was straight and unwarped, it must have rested upon the middle support. In stepping on the plank, from time to time, plaintiff noticed that it would give or spring up and down a little. He did not, at any time, move the plank, or call attention to its condition, or do anything to make it more secure.

McQuillan was the defendants' superintendent of the work, and on the day before the accident occurred, McQuillan told plaintiff to go up and put on the angle iron, and hurry up. It does not appear by whom the scaffold was made; but the defendants had ample materials for the construction of a scaffold which were accessible to their employees. It was not shown by plaintiff that defendants or McQuillan knew of any defect in the construction of the scaffold. Plaintiff had had considerable experience in the kind of work he was doing; had worked on spires and domes. It does not appear what caused the scaffold to fall. It was not necessary for plaintiff to go upon the scaffold to do the work he was engaged in when it fell with him. It was more convenient, however, to do it from the scaffold.

This was the substance of the testimony for plaintiff, and the court instructed the jury that he could not recover. Plaintiff thereupon took a non-suit with leave to move to set it aside. His motion to set it aside was overruled, and a judgment was rendered against him, from which he appealed to the court of appeals, where it was affirmed, and he has prosecuted his appeal to this court.

Plaintiff alleged that the injury he received was attributable to the negligence and carelessness of the defendants, and on no other grounds was he entitled to recover. It was indispensable to a recovery that he should have established that fact. But even if he had proven that the

scaffold was carelessly constructed by defendants, yet if he was aware of its defective construction, he was under no obligation to go upon it at the peril of his life, and if he did so it was at his own risk. The order of McQuillan, given to him the day before, to go up and put on the angle iron, did not necessarily oblige plaintiff to do that work from the scaffold; but, as he testified himself, he could have put on the angle iron without going upon the scaffold at all. Nor is this case analagous to that of *Keegan v. Kavanaugh*, 62 Mo. 232. The plaintiff was not called upon to execute an order in haste which allowed him " no time to investigate the appliances." The order was given the day before the accident occurred. · The scaffold did not fall with plaintiff until after four o'clock p. m., on the next day; and several hours before it fell plaintiff had observed enough to warn any reasonable man of the danger of going upon it. We will not recapitulate the facts testified to by plaintiff, to show that the scaffold was in a condition which made it unsafe to walk or stand upon it. These facts plaintiff knew, and there was no evidence tending to show that McQuillan or defendant knew them.

If on the plaintiff's evidence it clearly appears that he was guilty of carelessness or negligence which contributed directly to produce the injury he complains of, he cannot recover, and the court should so instruct the jury. *Harlan v. St. Louis, Kansas City & Northern R. R. Co.*, 64 Mo. 480; *Fletcher v. Atlantic & Pacific R. R. Co.*, 64 Mo. 484; *Schaabs v. Woodburn, &c., Wheel Co.*, 56 Mo. 175. Can there be but one conclusion drawn from plaintiff's testimony in this case? That he was careless even to recklessness is manifest. We do not regard the opinion of the court of appeals in this case "a most remarkable opinion," as appellant's counsel characterize it, but think that the conclusions reached by that court are fully sustained by the authorities, and its judgment is affirmed. All concur.

AFFIRMED.