JOHN A. HICKS, Respondent, v. THE MISSOURI PACIFIC RAILWAY COMPANY, Appellant.

### Kansas City Court of Appeals, June 22, 1891.

1. **Negligence**: PROXIMATE CAUSE: PROBABLE RESULT: EVIDENCE. Liability does not follow every negligent act, though injury does ensue. The negligent act must be the proximate cause of the injury, which must also have been the natural and probable result of the act. The evidence examined and found not to sustain the claim that the plaintiff's injury was the natural or probable cause of defendant's negligence.

2. ——— : CONTRIBUTORY NEGLIGENCE. Where the plaintiff, standing on his wagon loading shingles from a car to which his team is tied, sees a car which has been switched on the same track coming faster than usual down the grade to the car where he is working with increasing speed, and does not sit down though he has left the lines tied to the car and the horses are hitched to the wagon, he does not exercise such common prudence as to entitle him to recover. [ GILL, J., *dissenting.*]

3. ——— : ——— [ SMITH, P. J., *concurring* ]. In order to defeat the right of action it must appear, but for the plaintiff's negligence operating as an efficient cause of the injury in connection with the fault or neglect of the defendant, the injury would not have happened.

#### ON MOTION FOR REHEARING.

4. **Negligence**: DIFFERENCE OF FAIR-MINDED MEN. The rule that negligence cannot be conclusively established by a state of facts upon which fair-minded men may well differ, if allowed to prevail, would render the appellate court powerless to reverse any cause for contributory negligence.

*Appeal from the Barton Circuit Court.*—HON. D. P. STRATTON, Judge.

REVERSED.

*R. T. Railey*, for appellant.

(1) The court committed error in overruling defendant's demurrer at the close of plaintiff's evidence, and in overruling a similar demurrer after all the evidence had been introduced. We submit that the undisputed facts herein make out one of the clearest cases of contributory negligence ever reported in the books. Unless the courts of this state propose to abolish the doctrine of contributory negligence, and refuse to longer recognize it as a defense, we submit that the demurrer to the evidence, after the close of the whole case, should have been sustained. *Smotherman v. Railroad*, 29 Mo. App. 266; *Tuley v. Railroad*, 41 Mo. App. 437, 438; *Moody v. Railroad*, 68 Mo. 471; *Henze v. Railroad*, 71 Mo. 636; *Purl v. Railroad*, 72 Mo. 171; *Turner v. Railroad*, 74 Mo. 605; *Powell v. Railroad*, 76 Mo. 80; *Lenix v. Railroad*, 76 Mo. 91; *Hixson v. Railroad*, 80 Mo. 337; *Kelly v. Railroad*, 88 Mo. 534; *Harris v. Railroad*, 89 Mo. 236; *Yancy v. Railroad*, 93 Mo. 433; *Butts v. Railroad*, 98 Mo. 278; *Hudson v. Railroad*, 14 S. W. Rep. (Mo.) 15; Bishop on Non-Contract Law, sec. 484; *Harris v. Railroad*, 40 Mo. App. 261; *Gray v. Railroad*, 65 N. Y. 561. (2) The overwhelming testimony, as will appear from the record and statement of case herein, conclusively shows that plaintiff was guilty of negligence which directly contributed to, and brought about, the injury complained of. The jury must have either entirely disregarded the instructions and the evidence, or their verdict was the result of passion or prejudice. The court below ought, therefore, to have set aside the verdict. Having failed to do so, we ask a reversal at the hands of this court. *Whitsett v. Ransom*, 79 Mo. 258; *Spohn v. Railroad*, 87 Mo. 84; *Garrett v. Greenwell*, 92 Mo. 125; *State v. Prim*, 98 Mo. 372, 373; *Smotherman v. Railroad*, 29 Mo. App. 267, 268; *Tuley v. Railroad*, 41 Mo. App. 437, 438.

*Buler & Timmonds,* for respondent.

(1)  Plaintiff was not only where he had a right to be, but where he was required by the regulations of the defendant to be; and he was where defendant's employes, in charge of the train, saw, or by the exercise of ordinary care would have seen, him and his team and wagon. And it was as much their duty to look out for him and his team as for him to look out for them. *Kellny v. Railroad,* 101 Mo. 78.  Plaintiff was not bound to be prepared for an act of negligence on the part of defendant. 32 Mo. App. 413; *O'Connor v. Railroad,* 94 Mo. 150; *Clay v. Railroad,* 24 Mo. App. 39.  The burden of showing contributory negligence is upon the defendant. *King v. Railroad,* 98 Mo. 235; *O'Connor v. Railroad, supra.* Contributory negligence is, ordinarily, a question for the jury. *Drain v. Railroad,* 86 Mo. 574; *Petty v. Railroad,* 88 Mo. 306; *Weber v. Cable Co.,* 100 Mo. 194; *Cook v. Railroad,* 19 Mo. App. 329.  When the question of negligence is one of fact, the appellate court will only look to see if there is sufficient evidence to support the verdict, if the question is raised by demurrer to the evidence. *Winters v. Railroad,* 99 Mo. 509. (2)  A "flying switch" involves an extraordinary risk, and the degree of caution in making it should be commensurate with the risk or danger attending it. *Reagan v. Railroad,* 93 Mo. 352; *O'Connor v. Railroad,* 94 Mo. 150.  In many instances, the making of a "flying switch" is held to be negligence *per se.*  Pierce on Railroads, p. 356; 94 Mo. 155, 156; 1 Thompson on Negligence, p. 452.  Negligence is not imputable to a person for failing to look out for danger, when, under the surrounding circumstances, he had no reason to suspect any. *Langan v. Railroad,* 72 Mo. 392.  The law presumes the plaintiff to have been in the exercise of ordinary care, until the contrary appears. *Parsons v. Railroad,* 94 Mo. 293; *Buesching v. Gaslight Co.,* 73 Mo. 219. (3)  It is

negligence to run a car with a broken, defective or insufficient brake. Pierce on Railroads, p. 355. When it has been shown that defendant was using a broken, defective or insufficient brake, a *prima facie* case of negligence has been made, and it then devolves upon defendant to account for the condition of the brake, which · was not done in this case. *Huff v. Railroad*, 17 Mo. App. 361; *Norton v. Railroad*, 40 Mo. App. 642; *Hepsley v. Railroad*, 88 Mo. 348; *Lemon v. Chanslor*, 68 Mo. 340; *Miller v. Railroad*, 90 Mo. 393; *Parsons v. Railroad*, 94 Mo. 292; *Gutridge v. Railroad*, 95 Mo. 468. (4) The "flying switch" was the proximate cause of the injury. 1 Sutherland on Damages, pp. 20–73; *Metallic Co. v. Railroad*, 109 Mass. 277; Pierce on Railroads, p. 348; *Meyers v. Railroad*, 59 Mo. 223; *Brooks v. Railroad*, 35 Mo. App. 571; *Adams v. Railroad*, 100 Mo. 555; *Strauss v. Railroad*, 75 Mo. 186; *Waldhier v. Railroad*, 87 Mo. 37; 2 Thompson on Neg., pp. 1063, 1067, 1079, 1085, 1089, 1097. In this case there was a flying switch, a defective brake, a consequent collision of cars, an unusual concussion and jar, a startling of the team, a consequent jerk of the wagon, and plaintiff was thereby thrown to the ground—a continuous succession of events, so linked together as to make a natural whole. 1 Sutherland on Damages, p: 62. For numerous illustrations of proximate causes and consequential damages, see 1 Sutherland on Damages, p. 24, *et seq.*

ELLISON, J.—Plaintiff sues for personal injury received by falling off his wagon. He recovered below, and defendant appeals. He was a witness in his own behalf, and from his testimony (affirmative in character) we gather the facts which are necessary to dispose of this case. He was a teamster who had been engaged for eight or nine years in unloading lumber from cars. His horses were "not afraid of the cars," one of them he had used in this business four years; the other "had

been raised around the depot from a colt, he was seven years old ; I had worked them about four years, each one of them, around the depot." He knew the time of the trains, and knew the train would be in at the time he was loading his wagon when this accident happened. He drove his wagon along by the side of the car and hitched his team by tying the lines to the car. He then proceeded, with the aid of his hired man, to load his wagon with shingles from the car. As he had nearly finished his load, the defendant's servants took a car out of the train and made with it what is called a flying switch, sending it down on the sidetrack upon which was the car plaintiff was unloading, "bunched" with three others. By reason of having no brake ( or a defective one ) the car, moving a little down grade, went faster than usual in making such switches, and struck the standing car with some more force than usual, and made a noise which caused the horses to startle or jump, plaintiff losing his balance and falling off his wagon, whereby he was hurt so as to disable him from work for a time. The horses made no attempt to get away or run. Plaintiff was not hurt by being knocked down in the car, or by falling from the car, or while in the act of getting out of the car. He was on his wagon and fell from his wagon. He states explicitly that he was on his wagon "standing up on top of the shingles." His assistant states that he was putting the shingles on the wagon as he, the assistant, handed them out of the car, and that plaintiff was on the wagon at the time of falling. Some other witness standing off from the scene did not place him so definitely, but I take it that plaintiff's statement should be accepted in this respect as the fact. However, there is no necessity in referring to the testimony as the petition declares him to have been upon the wagon, and alleged that he fell from the wagon, and so his instructions were framed. The witnesses described the manner of striking the standing cars by saying that they were struck with "pretty good force,"

—with "considerable force,"—and that it made "considerable noise." One witness had "seen cars (on the main track) struck in switching about as hard as this was struck, although this struck harder than usual." Another witness said: "It seemed as if it (the car) was going with ordinary speed as they usually make flying switches." It may be conceded, however, that the car went down the sidetrack faster and struck the standing cars with more force than was usual; and that in coming together they made more than the usual noise. Indeed, it must be conceded that the defendant was guilty of negligence in switching the car with a defective break. But it need scarcely be suggested that liability does not follow every negligent act though an injury does ensue. The negligent act must be the proximate cause of the injury. The injury must also have been the natural and probable result of the act. *Snelling v. McDonald*, 14 Allen, 292; 1 Sutherland, Dam. 23.

Now was it the natural or probable result of the switch made as this one was, that the horses, which had worked amid such scenes and in such confusion all their lives, would be startled? And, if probable that the horses would be startled, was it further probable that plaintiff would lose his balance and fall off the wagon? Defendant's servants could well suppose that the plaintiff would not be engaged as he was, in the situation of his team at the time, unless they were thoroughly used to the confusion and noise of trains switching. The horses were not struck by the car, nor by anything from the car; they jumped merely because of the noise. Must defendant, in such a situation, be held to an established volume of noise in coupling or switching cars? Is it reasonable to suppose that anyone could assume that these horses would only stand a certain amount of racket or noise of the kind in question? Keeping in mind that these were horses that

were, and had been for years, accustomed to the railroad yards and to the noise and confusion of such places, how can it be said that defendant should be confined to a limited amount of noise in coupling or switching cars at the yards, or that defendant should know the limit beyond which they would be startled?

II. Another view of the case is equally fatal to the plaintiff's claim. He was guilty of contributory negligence. He stated that he saw the car coming, and that it was coming at faster speed than usual in such cases. His words are: "I saw it coming tolerably 'pert,' but I have seen them go that fast at the start, but the further that come the faster it come; it was down grade a little and they didn't check it up any." He further testified that the switches had been frequently made to the cars he was, at the time, unloading. He must certainly be held to as much knowledge as to the probable effect on his team as defendant's servants had, yet he remained standing, when by simply sitting down he would have been safe. He fell by losing his balance, and, while the bunch of shingles he had in his hands fell to the ground, none of the load was jerked off. There is no question whatever that he could have sat down and avoided falling. But it is urged that he did not have time after he saw the danger, and so he states. This will not do, for he saw the car coming and noted its increasing speed. It will not do to say that he did not know the noise would be so loud, for he was familiar with these things and knew all about them. Nor will it do to say that he did not think his horses would be startled, for that would destroy his case. This is not all. He hitched the horses by tying the lines to the car. It is true that this did not cause the move by the horses which threw him off his wagon, but it shows he thought it necessary to hitch them somewhere. By hitching them it perhaps provided against their getting away, but it did not provide against a sudden jerk on the tugs. Now it seems to me that in

Hicks v. The Mo. Pac. Ry. Co.

the situation he places himself, the business he was engaged in, at the place he was, common prudence would have suggested that he detach the tugs. from the swingle trees. If this simple, ordinary precaution had been taken this accident would not, of course, have happened. In view of the situation he was in, anyone would suppose that plaintiff would have protected himself from any danger likely to arise under such circumstances. But, instead of such protection, he hitched the horses by the lines, to the car, and, by the tugs, to the wagon.

The operation of a railway is a dangerous business, and such companies should be rigidly held to every legal responsibility, that they may be made watchful for the personal safety of those with whom they may come in contact; but in my view this cause cannot be sustained without doing violence to the right of the matter as well as the law of the case. At the same time, I have to confess that I feel some hesitation in my conclusion resulting from the fact that GILL, J., whose well-known sense of justice and practical application of legal principles has come to a different conclusion.

The judgment will be reversed. SMITH, P. J., concurs in a separate opinion.

SMITH, P. J.—Undeniably, it appears from the evidence that the defendant was guilty of negligence in the manner of "shunting" its cars, at the time and place of the injury. And it is equally plain that the plaintiff, at the time of the happening of the injury, was not exercising the due care enjoined by law. The true rule is, that if the negligence of the plaintiff contributed *in any degree* to cause or occasion the injury there can be no recovery, or, as it is sometimes said, that it must appear, in order to defeat the right of action, that, but for the plaintiff's negligence operating as an efficient cause of the injury in connection with the fault or neglect of the defendant, the injury would

not have happened. It is quite obvious, to my mind, that an application of the above-quoted rule to the essential facts, which the undisputed evidence establishes in this case, must necessarily preclude a recovery by plaintiff. In my opinion it constitutes an insurmountable barrier to the plaintiff's right of recovery, and so I must join in the conclusion reached by Judge ELLISON.

### ON MOTION FOR REHEARING.

ELLISON, J.—We are asked to grant a rehearing in this case, which we feel constrained to refuse. We have no controversy with the counsel on the proposition of law he advances. Our conclusion was, and is, that the plaintiff has not made out a case which can be sustained under the law. We have kept steadily in view the legal principles which counsel point out, but find ourselves unable to draw from them conclusions favorable to the case made. The proposition is advanced that "negligence cannot be conclusively established by a state of facts upon which fair-minded men may well differ," and it is then contended that, since the trial judge, the jury and one of the members of this court differ from the majority of the court, the legal proposition applies, and we are concluded from declaring plaintiff's conduct to have been negligence. We assume that when a question of negligence is at issue in a trial court, and is passed on by the judge and jury, that the result is the honest conclusion of fair-minded men. If, therefore, we allow plaintiff's contention to prevail, we find ourselves powerless to reverse *any* cause for contributory negligence. It can always be said to an appellate court that, notwithstanding its opinion, the jury differed, and, it being a difference between honest and fair-minded men, the verdict must stand. In other words the verdict is absolute, and must stand in all cases whatever may be the opinion of the reviewing tribunal.

Referring to what defendant might reasonably have expected to result from switching a car with defective brake.   It is quite truly said ( and authority is cited to sustain it ) that horses will become frightened by extraordinary sights and sounds, and that liability attaches for frightening horses by the negligent discharge of a gun.   But suppose the injured party drives up to where he knows guns are to be fired, puts the reins out of his reach and stands upright on his loaded wagon; what then ?

A case is reported from Tennessee ( Meigs, 561 ), where a militia captain drilling his company on the public streets, and ordering a discharge of firearms, was held liable for the value of a horse killed by running away.   But it is easy to see what the decision would have been in that case had the militia been upon their own parade grounds, and the owner of the horse had driven there knowing the drill was to take place.   So, if the horse had belonged to some one who handled baggage or equipage for the company, and for this purpose always attended the drill, it would be equally clear that no liability would have attached, and in such case the plea that the muskets were somewhat heavier loaded than usual would probably not have been seriously received.   The motion is overruled.