OATES v. METROPOLITAN STREET RAILWAY COMPANY, Appellant.

Division One, May 21, 1902.

1. **Negligence: STREET CAR: RUNAWAY HORSE: RINGING BELL.** Plaintiff's horse became frightened at an approaching street car and began backing until the buggy was forced on to the track, and the men in charge slowed up the car but continued to approach the horse, all the time violently ringing the bell, until when the car was within a few feet of the horse he suddenly wheeled around, nearly turned the buggy over, ran away in the direction he had originally come from, and threw plaintiff out and injured him. *Held,* in an action against the street railway company for a recovery of damages for such injury, that a demurrer to the evidence was properly overruled. *Held,* also, that the duty of the operator of a street car, under such circumstances, is just the same as the duty of one individual or citizen to another when they meet on the highway and the horse of the one becomes frightened at the vehicle of the other.

2. ———: ———: ———: **MATTER FOR JURY.** When the operator of a street car sees a frightened horse on the track, or near the track, it is his duty to manage his car in such manner as a man of ordinary prudence would do under the same circumstances, and it is always a question of fact for the jury whether such care in the running of the car has been observed.

3. ———: ———: ———: **WANTONNESS.** A street car company can not excuse its injury to a citizen in a vehicle by simply showing it was not wantonly, maliciously or heedlessly done.

4. ———: ———: ———: **RINGING BELL: DUTIES OF OPERATOR.** The rule of law is that, while the bell must ordinarily be sounded to

give notice of the approach of the car, still if the operator sees that a horse is already frightened by the approach of the car and that the citizen is in danger, it is his duty to cease sounding the bell, and to even stop if necessary, and if instead of doing so he continues to sound the gong or ring the bell and further frighten the horse, and thereby causes him to run away, the company is liable for injuries inflicted in consequence thereof.

5. ———: ———: ———: RELATIVE RIGHTS. As to the relative rights and duties of street cars and citizens traveling in vehicles drawn by horses and other animals, the sum of the adjudicated cases is that both have a right to use the street, but neither has an exclusive right.

6. ———: CONTRIBUTORY: PROXIMATE CAUSE: INSTRUCTION. It is only where plaintiff's negligence contributes directly to his injury that it precludes his recovery therefor, and the plaintiff's contributory negligence must mingle with the defendant's negligence as a direct and proximate cause in order to bar a recovery. Therefore, it was error to instruct that the defendant was not liable unless its negligence was the direct cause of the injury, while plaintiff was not entitled to recover if his negligence "but contributes to the injury."

7. ———: ———: RUNAWAY HORSE: BASIS FOR INSTRUCTION: DISPO- SITION TO SCARE. In a suit for injuries caused by the running away of a horse which has been frightened by the violent ringing of the bell on a street car, the fact that the horse scared at a dummy engine about a week before the accident, is not a sufficient founda- tion to authorize an instruction which precluded plaintiff's recovery "if the real cause of the accident was the disposition of the horse to frighten at cars."

Appeal from Jackson Circuit Court.—*Hon. E. 'P. Gates,* Judge.

AFFIRMED.

*John H. Lucas* and *Frank Hagerman* for appellant.

(1) If, upon the testimony, the plaintiff was not en- titled to recover, no error at the trial could justify a new trial. Homuth v. Railroad, 129 Mo. 642; Vogg v. Railroad, 138

Mo. 181; Bartley v. Railroad, 148 Mo. 142. (2) Plaintiff wholly failed to make a case. He was required to show by proof that he was in a position of danger long enough for the defendant's gripman to have known thereof and avoided the injury. Telle v. Railroad, 50 Kan. 455; s. c., 31 Pac. 1079. There was no testimony of the distance within which a train could be stopped, and neither the court nor the jury could determine the same without the aid of expert testimony. Gourley v. Railroad, 35 Mo. App. 92; Eckert v. Railroad, 13 Mo. App. 352; Mammerberg v. Railroad, 62 Mo. App. 563; Maher v. Railroad, 64 Mo. 276; Grinnel v. Railroad, 73 Iowa 93; s. c., 34 N. W. 758. The ringing of the bell was no evidence of negligence. Booth on Street Railways, sec. 298; Steiner v. Philadelphia Traction Co., 134 Pa. St. 199; s. c., 19 Atl. 491; Molyneax v. Railroad, 81 Mo. App. 29; Walters v. Railroad, 104 Wis. 251; s. c., 80 N. W. 453. If plaintiff's injuries might be attributable to several causes, for one of which defendant is not responsible, plaintiff was bound to prove, ·as he did not do, specifically a cause for which there is responsibility. Railroad v. Poole's Admr. (Va.), 40 S. E. 629; Searles v. Railroad, 101 N. Y. 661; s. c., 5 N. E. 67; Railroad v. Sparrow's Admr., 98 Va. 641; s. c., 37 N. E. 306. Plaintiff's claim as made in his petition was in fact without any support by his own proofs, and was affirmatively disproven by defendant. (3) There was no error in giving instructions 3, 5 and 7, because of which a new trial was granted. These instructions express the law, and are supported by precedents. Bartley v. Railroad, 148 Mo. 137; Weller v. Railroad (Mo.), 64 S. W. 145; Pryor v. Railroad, 85 Mo. App. 378.

*Elliott & Burnham* and *Wash Adams* for respondent.

(1) The violent ringing of the gong close to the horse when it was plain to be seen he was already frightened at the

car, was actionable negligence. Lightcap v. Phil. Trac. Co., 60 Fed. 212; Ellis v. Railroad, 160 Mass. 341; McDonald v. Railroad, 74 Fed. 106; Benjamin v. Railroad, 160 Mass. 3; Galesburg Co. v. Manville, 61 Ill. App. 490. (2) In order to defeat a recovery of damages arising from defendant's negligence, the plaintiff's contributory negligence must have been the proximate cause of the injury. Wharton on Neg-- ligence (2 Ed.), sec. 303, p. 214, and sec. 323; Bailey's Master's Liability for Injury to Servant (1 Ed.), p. 414; Webb's 'Pollock on Torts, p. 573; Beach Con. Neg. (2 Ed.), sec. 24; Whalen v. Railroad, 60 Mo. 328; Pinnel v. Railroad, 49 Mo. App. 170; Walsh v. Trans. Co., 52 Mo. 436; Flynn v. Railroad, 40 Cal. 14; Orleans v. Perry, 24 Neb. 831; Hoepper v. Southern Hotel Co., 142 Mo. 388; Kennayde v. Railroad, 45 Mo. 255. (3) An instruction authorizing the jury to defeat the plaintiff's recovery, if his negligence merely contributed (however remotely) to the injury, is erroneous. Whalen v. Railroad, supra. (4) An instruction asserting that defendant's negligence must have been the direct cause of the injury, while plaintiff's negligence prevents recovery if it "but contributes" thereto, is erroneous, since no such difference or distinction exists. See authorities cited under point 2. (5) A verdict obtained for a defendant by means of illegal and erroneous instructions, is entitled to no weight in an appellate court, because the losing party has a right to a trial under the forms of law. In such case the appellate court can not rightfully give weight to the verdict. The utmost it can lawfully do is to decide as matter of law whether plaintiff's petition or evidence lacks an essential element of recovery or whether plaintiff, under the undisputed facts, was guilty of contributory negligence barring a recovery. In other words, the appellate court can only rightfully interfere where the jury had no office or function to perform. Haven v. Railroad, 155 Mo. 216; Homuth v. Railroad, 129 Mo. 642. (6) The order granting a new trial is presumptively correct.

Where a trial court has granted a new trial because of erroneous instructions the appellate court should not interefere unless the lower court has clearly abused its discretion. If the instructions be erroneous, it is the duty of the appellate court to affirm the order granting a new trial. Hoepper v. Southern Hotel Co., 142 Mo. 390; Haven v. Railroad, supra.

MARSHALL, J.—The plaintiff sues the defendant for personal injuries caused by the alleged negligence of the defendant's servant in violently and needlessly ringing the gong on its cable car, thereby frightening the plaintiff's horse, causing him to run away and throw plaintiff out of his buggy. There was a verdict for the defendant. The motion for new trial contained seven grounds, among them, that the verdict was against the weight of the evidence, but the court based its action in granting a new trial upon its error in giving instructions asked by the defendant. From that order the defendant appealed.

The negligence set out in the petition is that while the plaintiff was driving east on Twelfth street, between Bales and Askew avenues, in Kansas City, about 7:15 a. m. on July 12, 1897, his horse became frightened at the defendant's approaching car, and backed upon the track, thereby placing plaintiff in a position of imminent peril; that the agents of the defendant saw such position and peril of the plaintiff and could have prevented the accident by the exercise of ordinary care, but that instead of so doing, the defendant's agent "carelessly and negligently caused the gong or bell on the car to be violently and continuously rung and jangled as said train continued to approach plaintiff's horse," causing the horse to suddenly whirl around in front of the car, almost overturn the buggy and to run away and throw plaintiff out of the buggy and injure him.

The answer is a general denial and a plea that the plain-

tiff's injuries "were caused and directly contributed to by plaintiff's own fault and negligence."

The evidence developed this state of facts. In consequence of his injuries the plaintiff was rendered unconscious and so remained several hours. Hence, he says he does not remember very distinctly what took place before his horse became frightened at the car, and that he can only remember seeing the approaching car and hearing the ringing of the gong. He does not remember anything else connected with the accident.

The plaintiff produced two witnesses, J. B. Hall and Albert Kreuser.

Hall occupied the second seat from the front on the grip car. His attention was attracted to the plaintiff and his horse by the ringing of the bell. At that time the car was within thirty or forty feet of the plaintiff's horse. The horse was very much frightened. The horse commenced to back. The car slowed up but continued to approach the horse, and all the while the gripman rang the gong "very violently." The plaintiff was unable to manage the horse. The gripman continued to ring the gong. The horse finally turned around in front of the car, ran away and the plaintiff was thrown out and injured.

Kreuser was seated in the first single seat on the north side of the grip car and his testimony is substantially the same as Hall's.

On the other hand, defendant's counsel makes the following summary of the defendant's showing:

"Defendant's evidence consisted of the testimony of Harry L. Mitchell, conductor of the car, Green Allen, its gripman, S. H. Bales, R. N. Middleton and Harry Hornbrook.

"(a) Harry L. Mitchell, conductor of the train, said that the horse was plunging and rearing on Bales avenue before it got to Twelfth street and he could not tell then which way it was going. When it got to Twelfth street plaintiff pulled first on one line and then on another, when the horse turned suddenly, running to the west for some distance, where

plaintiff was thrown out. The bell was rung to warn plaintiff, whose horse was running away towards the east, while the car was going west at its usual rate of ten or twelve miles an hour, and it stopped seventy-five to one hundred feet from the horse, the train running about twenty-five feet towards the horse before it turned.

"(b) Green Allen was the gripman on the train and he saw the horse plunging and rearing on Bales avenue. When it reached Twelfth street it turned east and he rang the bell of the train to warn the driver and shut down his appliances as soon as it appeared that the horse was coming towards him. The horse came within fifty to seventy-five feet of the car when it turned and ran west.

"(c) S. H. Bales was sitting on his front porch at his home at Twelfth and Askew avenue reading his paper; saw the horse running west down Bales avenue, but he neither noticed nor saw any car nor heard any ringing of the bell.

"(d) R. N. Middleton was at the engine house and saw the horse running away, it looking to him as if 'he was coming down from the north on to Twelfth street, or had just struck Twelfth street from Bales avenue.' He did not notice the horse turn east, nor see nor hear any car nor any noise such as is complained of in the petition.

"(e) Harry Hornbrook lived on the south side of Twelfth street between Bales and Indiana avenues. He was in the front room of the house, saw the horse run by, going west, but neither saw the train nor heard any noise therefrom."

The instructions given for the defendant, which the court afterwards held to be erroneous, were as follows:

"3. The mere fact, if true, that the horse which plaintiff was driving frightened at the cable train and plaintiff was thereby thrown from his vehicle and injured, gives him no right to sue defendant and recover damages. Before in any event plaintiff can recover, you must find from the greater weight of all the testimony in the case: first, that defendant was negli-

gent in some particular respect submitted to your consideration, and, second, that the negligence so found was the direct cause of frightening the horse, so that it ran away and injured plaintiff. If you do not find both these facts to be true, then defendant is entitled to the verdict, or if the plaintiff was negligent and thereby contributed to his own injuries, then defendant is entitled to the verdict, and this is so even if you find that the defendant was also negligent. The act of negligence charged in the petition, and to which your attention must be confined in considering whether defendant was negligent, is this: The trainmen saw or by the exercise of ordinary care would have seen plaintiff in a dangerous position and were negligent in permitting the train to approach plaintiff and causing the gong to be rung so as to frighten the horse and cause it to run away.

"5. But even if you should find that the gripman did not exercise reasonable prudence, yet if the act of the gripman was not the direct cause of the injury then your verdict must be for defendant; or if the real cause of the accident was the disposition of the horse to frighten at cars or because the horse was running away and beyond plaintiff's control before it got to Twelfth street, then your verdict will be for defendant.

"7. The difference between negligence on the part of defendant and on the part of the plaintiff is this: Defendant's negligence, if any, must be found by the jury to have been the direct cause of the injury, whereas, plaintiff's negligence, if any, defeats a recovery if it but contributes to the injury, and this is so even though defendant was also negligent. If negligence of defendant and negligence on the part of plaintiff combine to cause the injury, then the plaintiff can not recover."

The error ascribed to instructions three and seven is that they require the jury to find that the defendant's negligence was the *direct* cause of the injury, while it debars the plaintiff from recovering if his negligence contributed in any man-

ner or degree to the injury.   The error ascribed to instruction five is that there is no substantial evidence in the case upon which to base the portion of that instruction which directed a verdict for the defendant, "if the real cause of the accident was the disposition of the horse to frighten at cars."

## I.

Both parties concede that a bell or gong on a street car is intended to be rung, and that the purpose of ringing it is to give notice of the approach of the car, and that under some circumstances it would be negligence not to ring it.   But the parties are disagreed as to whether it was negligence to ring the bell violently under the circumstances of this case, or, as the defendant contends is necessary to the plaintiff's right to recover, whether the bell was wantonly, maliciously and needlessly rung.

Starting with the conceded proposition that a bell is placed on a car to be rung so as to give notice of the approach of a car, and that a failure to ring it may be negligence and that wantonly and needlessly ringing it may also create a liability, the conclusion applicable to this case easily deduces itself.   There was no necessity or sense in ringing the bell in this instance if the testimony adduced by the plaintiff is true, for both the plaintiff and the horse knew of the approach of the car, and, hence, no further notice thereof was necessary. So, too, if the testimony adduced by the defendant be true that the horse began to run away on Bales avenue and continued so to do after it got into Twelfth street, there was likewise no sense or necessity for ringing the bell or of giving notice to the plaintiff or the horse of the approach of the car. Even a court may indulge the information that is possessed by every man that ringing a bell will not stop a runaway horse or cause him to deflect his course so as to avoid a collision with a street car.   The defendant admits the ringing of

the bell but seeks to justify it on the ground that it was thereby trying to assist the plaintiff in keeping the horse away from the car.

Such an explanation did satisfy the jury, but it fails to satisfy the court. There was ample evidence to sustain the plaintiff's contention that the horse became frightened at the approaching car and began backing until the buggy was forced onto the track, and that the defendant's agents slowed up the car, but continued to approach the horse, all the while ringing the bell violently, until when the car was within a few feet of the horse, he suddenly wheeled around, nearly turned over the buggy, ran away in the direction he originally came from, and threw the plaintiff out and injured him.

This being true, the demurrer to the evidence was properly overruled, and the point here principally relied on by the defendant that in no event would the plaintiff be entitled to recover and therefore the verdict was for the right party and the verdict should not be set aside, becomes untenable.

The sum of the adjudicated cases bearing upon the relative rights and duties of street cars and citizens traveling in vehicles drawn by horses or other animals is, that both have a right to use the street, but that neither has an exclusive right. The operator of a street car is not necessarily obliged to stop the car every time a horse shies or scares at the approaching car, but when the operator of the car sees that a horse is frightened at the car, it is his duty to manage his car in such manner as a man of ordinary prudence would do under the same circumstances, and it is always a question of fact for the jury whether such care in the running of the car has been observed. This duty may or may not lead to the necessity for bringing a car to a full stop. The duty of the company in this regard is just the same as the duty of one individual or citizen to another when they meet on the highway and the horse of the one becomes frightened at the vehicle of the other, or at anything upon the vehicle of another. Because a street

car carries more people than any other kind of a conveyance, or because it is authorized to run more rapidly than a vehicle can ordinarily be legally driven, or because the rush and restlessness of the age make unreasonable demands for more and more rapid transit along the crowded thoroughfares of populous cities, it does not follow that a street car can be run in disregard of the rights of persons traveling by other means, nor that a street car company is exempt from the common-law duty of every one to exercise ordinary care, nor that it is only liable where the agents act wantonly, maliciously and heedlessly. [Benjamin v. Street Railway, 160 Mass. l. c. 5, citing and following Commonwealth v. Temple, 14 Gray 69, and Driscoll v. Street Railway, 159 Mass. 142; Ellis v. Railroad, 160 Mass. 341.] These cases are strikingly similar to the case at bar.

In the Ellis case the court defined the respective rights and duties of the car company and the citizen as follows:

"Although there was some conflict of evidence in this case, the jury may have found that the plaintiff, having no reason to think it unsafe to do so, drove down a street in the city of Lynn on which was an electric railway and there met one of the defendant's open electric cars filled with passengers, on which the motorman was continually sounding the gong; that his horse was frightened at the car and at the noise of the motor and of the gong, and manifested its fear in such a way as to show the motorman that the plaintiff and his daughter, who was riding with him, were in great peril, and that the motorman, instead of stopping the car, or ceasing to sound the gong, kept on with the car and continued to make a loud clangor with the gong, so that the horse became unmanageable, broke the carriage, threw the plaintiff out, and thereby inflicting serious injuries upon him. The defendant's request for rulings go upon the theory that the manager of an electric railway car upon a street is never called upon to stop

Vol 168 mo—35.

the car or to change his method of managing it to avoid any danger from the fright of horses other than the danger of collision with the car.    These requests were founded on an erroneous view of the law.    It is a well-known fact that most horses are frightened at their first view of a moving electric car, especially if they encounter it in a quiet place away from the distracting noises of a busy city street.    It is only by careful training, and a frequent repetition of the experience, that they acquire courage to meet and pass such a car on a narrow street without excitement.    The rights of the driver of a horse and the manager of an electric car under such circumstances are equal.    Each may use the street, and each must use it with a reasonable regard for the safety and convenience of the other.    The motorman is supposed to know that his car is likely to frighten horses that are unaccustomed to the sight of such vehicles, while most horses are easily taught after a time to pass it without fear.    It is his duty, if he sees a horse in the street before him that is greatly frightened at the car, so as to endanger his driver or other persons in the street, to do what he reasonably can in the management of his car to diminish the fright of the horse, and it is also his duty in running the car to look out and see whether, by frightening horses or otherwise, he is putting in peril other persons lawfully using the street on foot or with teams.    In this way the convenience and safety of everybody can be promoted without serious detriment to anybody.    Of course the owners and drivers of horses are required at the same time to use care in proportion to the danger to which they are exposed.    [Benjamin v. Holyoke Street Railway, ante, 3.]"

To the same effect are Lightcap v. Traction Co., 60 Fed. Rep. 212 (Circuit Court of U. S. Eastern District of Pa.), cited with approval in McDonald v. Street Railway, 74 Fed. Rep. 1. c. 106 (U. S. Circuit Court Western Division of

Northern District of Ohio) ; Electric Co. v. Manville, 61 Ills. App. 1. c. 492.

The true rule is, while the bell must ordinarily be sounded to give notice of the approach of the car, still if the operator of the car sees that a horse is already frightened by the approach of the car and that the citizen is in danger, it is his duty to cease sounding the bell and to even stop, if necessary, and if instead of doing so he continues to sound the gong or ring the bell and further frighten the horse and cause him to run away, the company is liable for injuries inflicted in consequence thereof.

This horse did no more than any self-respecting horse who was imbued with a sense of self-preservation would have done under the same circumstances, that is, when the car got within a foot or two of the horse and was still approaching, and the bell was being violently rung, and the horse could not go forward any further, he turned around and ran out of the way of the car.

Of course, if the driver of the horse knows that the horse is liable to become frightened at street cars and to run away, and with such knowledge drives him on a street with a car line on it, he does so at his own risk. But this does not authorize or justify the operator of a street car to needlessly sound the gong or ring the bell nor to continue to do so, when it is apparent that the only effect thereof is to further frighten the horse.

There could be no possible excuse for the conduct of the operator of the car in this case continuing to sound the gong, if the testimony for the plaintiff is true, and this is as far as it is necessary to go to reach the conclusion that the demurrer to the evidence was properly overruled.

## II.

Instructions three and seven given for the defendant sharply drew a distinction between the negligence of the de-

fendant and the contributory negligence of the plaintiff. Those instructions declared the law to be that the defendant was not liable unless its negligence was the direct cause of the injury, while the plaintiff was not entitled to recover if his negligence "but contributes to the injury:" That is, that the defendant was liable only for direct negligence, while the plaintiff was cut off from recovery if he was guilty of any negligence, however slight or remote or indirect it may have been.

The law is that a defendant is liable if his negligence was the direct and proximate cause of the injury, unless the plaintiff has also been guilty of such negligence as directly contributed to the happening of the injury, and the defendant is not liable no matter how negligent he may have been if the plaintiff's negligence has thus contributed to the injury, for the doctrine of comparative negligence has never obtained in this State. [Hurt v. Railroad, 94 Mo. l. c. 264.] In each instance the negligence and the contributory negligence must be direct, that is, must have entered into and formed a part of the efficient cause of the accident. [Hoepper v. Hotel Co., 142 Mo. l. c. 388; Beach on Contr. Neg. (2 Ed.), sec. 24; Matthews v. Toledo, 21 Ohio Cir. Ct. Rep. 69; Dunkman v. Railroad, 16 Mo. App. 548; Corcoran v. Railroad, 105 Mo. 399; Murray v Railroad, 101 Mo. 236; Kellny v. Railroad, 101 Mo. 67; Hicks v. Railroad, 46 Mo. App. 304; Pinnell v. Railroad, 49 Mo. App. 170; Meyers v. Railroad, 59 Mo. 223.]

Mere negligence, without any resulting damage, no more bars a plaintiff's recovery than it creates a liability against a defendant. [Dickson v. Railroad, 124 Mo. 140.] Remote negligence which does not become an efficient cause, neither creates nor bars a liability. [Kennedy v. Raiload, 36 Mo. 351; Meyers v. Railroad, 59 Mo. 223.] It is only where the plaintiff's negligence contributes directly to his injury that it precludes his recovery therefor. [Moore v. Railroad, 126 Mo. 265.] And the plaintiff's contributory negligence must min--

gle with the defendant's negligence as a direct and proximate cause in order to bar a recovery. [Nolan v. Shickle, 69 Mo. 336; Frick v. Railroad, 75 Mo. 542.]

These instructions were, therefore, erroneous, and as the jury was misdirected and as the plaintiff had made out a prima facie case, he was entitled to have the law properly declared to the jury, and the trial court did right in granting a new trial. As the case must be tried anew it is proper to add, that the mere fact that the horse had scared once, about a week before, at a dummy engine, was not a sufficient foundation to authorize that portion of the fifth instruction which precluded the plaintiff's recovery, "if the real cause of the accident was the disposition of the horse to frighten at cars."

For these reasons the judgment of the circuit court is affirmed. All concur.