227 S.W.2d 499 (1950)
ALBERT H. HOPPE, Inc.
v.
ST. LOUIS PUBLIC SERVICE CO.
No. 27776.
St. Louis Court of Appeals. Missouri.
February 21, 1950.
Rehearing Denied March 24, 1950.
*500 Mattingly, Boas & Richards, St. Louis, Lloyd E. Boas, St. Louis, for appellant.
Willson, Cunningham & McClellan, St. Louis, Richard D. Gunn, St. Louis, George C. Willson, III, St. Louis, for respondent.
WOLFE, Commissioner.
This is an action for property damages sustained by the plaintiff when a hearse that it owned was struck by a bus owned and operated by the defendant. Upon trial there was a verdict and judgment for the defendant but twenty-nine days thereafter *501 the court of its own motion set aside the verdict and judgment on the ground that they were against the weight of the evidence. It is from this order that defendant appeals.
On July 27, 1948, the plaintiff's hearse was being driven by Joseph O'Connor, plaintiff's employee, north on Twentysecond Street in the City of St. Louis. O'Connor was accompanied by Eugene Miller and Richard Lemke, both of whom also worked for Albert H. Hoppe, Inc. They were transporting for delivery a casket containing a corpse and this was being done for and at the direction of their employer.
O'Connor stated that as he was going north on Twenty-second Street he passed a truck in the block south of Madison Street and then continued northwardly in the right lane of traffic. He reached a point where Madison intersects Twentysecond Street and after looking in both directions and seeing no vehicles approaching his line of traffic, he started through the intersection, accelerating his speed to an estimated eighteen miles per hour. When the hearse was partly past the center line of Madison Street, it was struck in the center by the defendant's eastbound bus. The bus pushed the hearse onto the sidewalk at the northeast corner, knocking down a lamp standard and killing one of O'Connor's assistants.
There are buildings on all four corners of the intersection and they are the width of the sidewalk from the curb. Both streets are about thirty-six feet wide and there is nothing to obstruct one's view in any direction after entering the intersection.
Miller, who was with O'Connor, stated that he did not see the bus until they were into the intersection and it was about to hit them. He also stated that the hearse was going about eighteen miles per hour.
A witness named Egan, who was a passenger on the bus, stated that it was traveling at the rate of twenty-five to thirty miles per hour and that it did not slacken its speed until it hit the hearse.
Another bus passenger named Schmatz, testifying for the plaintiff, made the same estimate of the speed it was traveling and stated that the hearse entered the intersection first.
Arthur Loehrer testified that he was a passenger on the bus which was traveling between twenty-five and thirty miles per hour and that the hearse was in the intersection traveling at about twelve to fifteen miles per hour when the bus was twenty to twenty-five feet from the intersection.
The driver of the truck that the hearse had passed as it approached Madison Street testified that the hearse entered the intersection first.
Testifying for the defendant, the bus driver stated that he slowed down as he approached Twenty-second Street and as there was no one to get off the bus he accelerated his speed, blew the horn and looked to the left and right. He saw the hearse to the right and it was about entering the south curb line of Madison Street. He stated that his bus was back by the building line. He applied his brakes but could not stop before hitting the hearse.
Three other bus passengers testified that both vehicles reached the intersection at about the same time.
On cross-examination O'Connor said that when he reached the intersection he could see a quarter of a block down Madison Street. He estimated this distance to be about thirty-five feet. He also stated that after he got into the intersection he looked westward but did not see the bus and he never saw it until it struck the hearse.
There was also evidence relating to the damage done to the hearse.
At the time of the collision there was in force an ordinance of the City of St. Louis which provided: "The operator or driver of a vehicle shall have the right of way over the operator or driver of another vehicle approaching from the left on an intersecting street and shall give the right of way to the operator or driver of a vehicle approaching from the right on an intersecting street. The right of way shall mean the *502 right to proceed when two or more vehicles will reach said intersection at approximately the same time."
The case was submitted to the jury on the failure under the ordinance to give the right of way to the hearse.
The jury found for the defendant and fourteen days after the entry of the verdict and judgment the plaintiff filed a motion for a new trial. Twenty-nine days after the judgment the court ordered the motion for a new trial stricken from the record on the ground that it had not been filed within the time allowed by the statute. The court further ordered on its own motion that the verdict and judgment be set aside for the reason that they were against the weight of the evidence.
The fact that the plaintiff filed a motion for a new trial after the time allowed by statute and the fact that it was stricken by the court has no bearing on the right of the court of its own motion to set aside the verdict as against the weight of the evidence. Laws of 1943, p. 353, sec. 119, Mo.R.S.A. Sec. 847.119, provides: "Not later than 30 days after entry of judgment, the court of its own initiative may order a new trial for any reason for which it might have granted a new trial on motion of a party, and every order granting a new trial shall specify the grounds therefor."
This discretionary right is vested in the court and may be exercised regardless of whether or not a motion for a new trial has been filed. Supreme Court Rule 3.25. De Maire v. Thompson, Mo.Sup., 222 S.W.2d 93.
It is contended that the plaintiff was guilty of contributory negligence as a matter of law and consequently not entitled to recover. In stressing this point the appellant directs our attention to the cross-examination of O'Connor wherein he made some statements contradictory of those that he made on direct examination, and further stated that he did not see the bus. In Stumpf v. Panhandle Eastern Pipeline Co., 354 Mo. 208, 189 S.W.2d 223, loc. cit. 227, the court stated: "In order for contributory negligence to legally bar the plaintiff's recovery, it is not sufficient that plaintiff was negligent and that such negligence contributed to the cause, or was a contributing cause, of his injurya contributing cause but for which the injury would not have been sustained. The negligence of plaintiff must have been a proximate cause, that is, a `proximate cause' as the term is used in expressing a cause which may be reasonably regarded as a direct, producing or efficient cause; or as entering into and forming a part of the direct, producing or efficient cause of the injury. Perkins v. Kansas City Southern R. Co., 329 Mo. 1190, 49 S.W.2d 103; Hires v. Letts Melick Grocery Co., Mo.Sup., 296 S.W. 408; Oates v. Metropolitan St. Ry. Co., 168 Mo. 535, 68 S.W. 906, 58 L.R.A. 447."
This follows the earlier statement that "The rule as to the quantum of contributory negligence which is sufficient to prevent recovery is that it must be such as to enter into and form the direct, producing, and efficient cause of the casualty, and absent which the casualty would not have happened." Howard v. Scarritt Estate Co., 267 Mo. 398, 184 S.W. 1144, 1145.
The determination of contributory negligence ordinarily is a question for the jury and in passing upon whether the plaintiff was guilty of contributory negligence as a matter of law we must take the view of the evidence most favorable to the plaintiff. Tribout v. Kroger Grocery & Baking Co., Mo.App., 191 S.W.2d 261.
Plaintiff's evidence and that of the defendant clearly indicates that the hearse was first to enter the intersection. The bus driver said he first noticed the hearse when he was as far back as the building line. There is no proof that the bus could be seen by O'Connor at the time he entered the intersection. Had he continued to look thereafter he could have seen the bus.
He had a duty to keep a lookout ahead and laterally, but it is obvious that one cannot keep an uninterrupted watch in both directions. We have here about one second of time involved for the hearse to reach the point of impact, approximately eighteen feet from the curb line. If at some point within that distance he had seen the bus, we cannot say that he could have *503 avoided being struck by it. It is also true that if he had seen the bus there was no reason for him to anticipate that it would not yield to him the right of way in violation of the ordinance in force. Since any negligence of which O'Connor may have been guilty would also have to be "a proximate cause" or a producing cause of the casualty, it cannot be held that he was guilty of contributory negligence as a matter of law and under all the testimony it became a jury question.
Since the court would not have been justified in taking the case from the jury, we cannot say that the evidence presents a situation where the trial court abused its discretion in granting a new trial on the ground that the verdict reached was against the weight of the evidence. We stated in Ritzheimer v. Marshall, Mo.App., 168 S.W.2d 159, 165:
"It is well-established law that trial courts in reviewing verdicts are permitted to weigh the evidence and, if they think injustice has been done, they may grant a new trial in cases where they would not be justified in taking an issue from the jury. * * *
"Our Supreme Court, in a comparatively recent case, held that where there is some substantial evidence to support a jury's verdict, the trial court may grant a new trial because it believes the verdict is against the weight of the evidence, and the reviewing court, even though it should disagree with the trial court's opinion, has no right to interfere." King v. Kansas City Life Ins. Co., 350 Mo. 75, 164 S.W.2d 458, loc. cit. 464; Riche v. City of St. Joseph, 326 Mo. 691, 32 S.W.2d 578.
The evidence was sufficient to have supported a verdict for the plaintiff and we are obliged to defer to the trial court's decision that the verdict for the defendant was against the weight of the evidence.
Another contention raised is that the court gave the defendant no opportunity to be heard before setting aside the judgment and that this constituted an abuse of discretion making the order "arbitrary and void". In support of this point we are cited to cases wherein the court set aside verdicts because of information reaching the court after the verdicts had been returned. In such cases there was an issue before the court of which the complaining party was unaware. But such situation is not present here. The court had all of the evidence before it at the time the verdict was entered and within the time allowed by statute set the verdict aside on the ground that it was against the weight of the evidence presented. It acted upon "its own initiative" as the statute directs and no error was committed in so doing.
It is therefore the recommendation of the Commissioner that the order setting aside the verdict and judgment be affirmed and the cause remanded.
PER CURIAM.
The foregoing opinion of WOLFE, C., is adopted as the opinion of the court.
The order of the circuit court setting aside the verdict and judgment is accordingly affirmed and the cause remanded.
ANDERSON, P. J. and HUGHES and McCULLEN, JJ., concur.