### GEORGE H. MARDEN

### *vs.*

### PORTSMOUTH, KITTERY AND YORK STREET RAILWAY.

| 100 | 41 |
| 104 | 44 |
| f104 | 45 |
| 104 | 46 |

### York.    Opinion March 2, 1905.

*Street Railways.    Negligence.    Duty of Traveler at Crossings.    Evidence.*

In an action on the case for negligence on account of a collision between a team and an electric car, it is *held:*

1.  That between street crossings, the car, from the fact that it must pursue one course, and cannot turn out, necessarily has a paramount right to be exercised in a reasonable and prudent manner.

2.  That when approaching a public street junction, the rule is that the motorman shall be held to anticipate that any person approaching such junction from either side may turn his team into it, and shall then exercise all due care to have his car under such control as to be able to stop it at the crossing, if necessary, to avoid an accident.

3.  At such crossings the car has no right superior to that of other vehicles. The car and vehicle are on an equality.

4.  The rule of caution required in approaching the crossing of a steam road does not fully apply to the crossing of an electric road.

5.  In approaching such crossings, it is not incumbent upon the traveler upon foot or with a team, as a matter of law, to look and listen.   He must however, be in the exercise of reasonable care.

6.  Whether a traveler, as above, is in the exercise of reasonable care, is a question of fact for the jury, depending upon the circumstances of each particular case.

7.  The speed of a car is a fact from which an inference of negligence may be drawn.

8.  In crossing a car track at the junction of a street, the traveler is not required to look the whole length of the visible track to see if a car is coming, but along the track far enough to warrant an ordinarily prudent man having in mind his own safety, under like circumstances, to conclude that no car was in such proximity as to endanger his safety in crossing.

On motion by defendant.    Overruled.

The facts sufficiently appear in the opinion.

*H. H. Burbank and John G. Smith,* for plaintiff.

*J. C. Stewart, Emery & Sims and Orville Dewey Baker,* for defendant.

SITTING:    WISWELL, C. J., WHITEHOUSE, STROUT, SAVAGE, PEABODY, SPEAR, JJ.

SPEAR, J.    This is an action on the case for negligence resulting from a collision between the plaintiff's cart and the defendant's electric car.    The case shows that the plaintiff on the 15th day of June 1901, was driving a covered butcher's cart along a public street in the town of Kittery in an easterly direction, parallel with the defendant's road about three feet northerly thereof, the track being on the southerly side of the road.    The highway and the track descend quite sharply towards the east, the grade being about six feet in one hundred.    At the bottom of the grade, a cross street called Williams Avenue runs substantially at right angles and southerly from the highway on which the plaintiff was driving.    When the plaintiff reached the mouth of Williams Avenue he attempted to turn his team into it, thereby squarely crossing the defendant's rails.    While crossing the track the front part of the off hind wheel of the plaintiff's cart was struck by the defendant's car and the injuries were produced of which the plaintiff complains.    After a long trial involving more than 250 pages of testimony, the jury returned a verdict for the plaintiff of $1103.73.    The case comes up on motion to set this verdict aside as against the law and the evidence.    The real issues to be considered are whether the defendant was guilty of negligence with respect to the speed with which they were running their car at the time the accident occurred, and whether the plaintiff was guilty of contributory negligence.    The evidence upon the one side and the

other upon the point of speed is conflicting, the plaintiff and some of his witnesses contending that the car was running from 15 to 20 miles an hour down the grade towards the crossing, while those of the defendant assert the car was moving at a rate of only 4 or 5 miles an hour. There was also testimony on the part of the plaintiff bearing upon the question of speed tending to show that the cart and horse were thrown bodily in the air when the car struck them, the cart some 40 feet and the horse half that distance, and that the car itself ran from 150 to 200 feet beyond the center of the crossing before it could be stopped, although the motorman claims that he did all in his power to check the car in the quickest possible manner after he discovered that the plaintiff was about to cross the track in front of it. In finding the defendant guilty the jury must have come to the conclusion that they were running their car at the time of the collision at an unsafe and unreasonable rate of speed.

But the defendant says, admitting its negligence as found by the jury, it is not guilty because the plaintiff's own testimony, allowing it to be true, clearly discloses the fact that, by his own negligent acts, he contributed to the accident which caused his injuries. Whether the plaintiff in his connection with the accident was guilty of contributory negligence, assuming the guilt of the defendant, may depend in a large degree upon the duty which the defendant, under the particular circumstances in this case owed to the plaintiff. This consideration involves a question with respect to the relative rights and duties of electric cars and vehicles, while concurrently approaching and passing over public street crossings. The law upon this subject seems to be well settled in many states. While the contention has been made that a person approaching an electric road with the intention of crossing the track, should observe that same degree of watchfulness and care as when attempting to cross a steam road, it is readily obvious that the cases are entirely dissimilar. The steam road is invariably possessed of a private roadbed, protected by law, and vested with the right to punish, as a trespasser, any person who may invade its property outside of that part of its premises made public for the prosecution of its business. They are also permitted by law to propel their trains at a tremendous rate of speed, so that it is impracticable,

if not impossible, to stop them quickly or within a short distance. The law recognizes these facts and, not only for the protection of the individual who may undertake to cross a steam railroad track, but for the safety of the many who may be riding in the public coaches, requires the individual, when he approaches the passageway of such an engine of destruction, within a proper distance of the track to look and listen, not only with his eyes and ears, but with his mind, to discover whether a train is approaching. The law makes it imperative for travelers to do this and a failure to comply with this law presumes them to be guilty of contributory negligence, if they are injured by a collision with a passing train. This is undoubtedly a wise and judicious law in its application to steam roads, but it should not be fully applied to the use of electric and other street railroads.

An electric road is installed and operated upon a principle entirely different from that of the steam road. Our court has said in *Briggs* v. *Horse R. R. Co.*, 79 Maine, 367, that "the laying down of rails in the street and running the street cars over them for the accommodation of persons desiring to travel that street is only a later mode of using the land as a way, using it for the valuable purpose for which it was originally taken. It may be a change in the mode, but it is not a change in the use. The land is still used for a highway." This rule of law applies equally, whether the motor for propelling the car is a horse, steam or electricity. It is apparent therefore, that the electric cars which are now becoming of very common use, not only in our cities but in our villages and country towns, are operated for the most part within the limits of the legally located highways, as said in *Benjamin* v. *Holyoke St. Ry. Co.*, 160 Mass. 1, where "the use of the street for electric cars and by the general public is concurrent; and the defendant is bound in using the street to have reference to its reasonable use by others." Unlike steam cars, the electric cars run, or may be run at times, through streets crowded with people and vehicles, and therefore, instead of being vested with the right to run at a rapid rate of speed, they are required to make a reasonable use of the streets, consistent with the rights of other persons and vehicles who may occupy the streets in conjunction with

them. Upon this point the court in *Driscoll* v. *West End St. Ry.*, 159 Mass. 146, holds that "the drivers and conductors of street railway cars, whatever the motive power, have in general the same rights and duties with reference to other vehicles, crossing their course that the drivers of omnibusses have, for example, or that the driver of any other vehicle has. *O'Neil* v. *Dry Dock, East Broadway & Battery Ry.*, 129 N. Y. 125. In *Commonwealth* v. *Temple*, 14 Gray, 69, 75, it is said; "Where the entire public, each according to his own exigencies, has a right to the use of the highway, in the absence of any special regulation by law, the right of each is equal. Each may use it to his own best advantage, but with a just regard to the like right of others." See also *Newark Passenger Ry. Co.* v. *Black*, 55 N. J. L. 605. But a reasonable use must be measured by the relative facility with which cars and other kinds of vehicles are able to move about with respect to one another in the streets. It must be recognized that cars are confined to a track and are unable to turn to the right or to the left, that they are permitted to occupy the streets for the purpose of facilitating travel, and that teams and travelers as far as practicable must keep out of their way, and not impede their progress more than is absolutely necessary. It is perfectly obvious that a team can move with ease, while a car cannot, but is confined to one course; hence a reasonable use of the streets, having reference to the relative facility with which the locomotion of teams and cars can be controlled, necessarily gives the car between street crossings certain privileges over other vehicles. These superior privileges are well stated in *O'Neil* v. *Railroad*, 129 N. Y. 129, as follows:

"As the cars must run upon the tracks and cannot turn out for vehicles drawn by horses, they must have the preference and such vehicles must, as they can, in a reasonable manner, keep off from the railroad tracks so as not to prevent the free and unobstructed passage of the cars. In no other way can street railroads be operated. As to such vehicles the railways have a paramount right to be exercised in a reasonable and prudent manner."

But in the end, what is a reasonable use is a question of fact depending upon the circumstances of each particular case, having

reference to the manner in which street railroads are obliged to be operated and the purpose for which they are designed. 57 Am. St. Rep. 729; *Driscoll* v. *West End St. Ry.*, 159 Mass. 142.

Yet the defendant seems to assume in its brief, that the same rule with respect to approaching a public street crossing traversed by electric cars, applies to electric as to steam roads, and assert that, on this point, this case falls clearly within the decision of *Blumenthal* v. *Railroad* and *Day* v. *Railroad*, both reported in 97 Maine. But the same rule does not apply. While it may be found as a matter of fact, in any case involving an accident by crossing in front of an electric car, that it was the duty of the person undertaking to so cross, to look and listen, it cannot be laid down as a rule of law that a failure to do this does, per se, constitute negligence. That is, whether the failure of the party injured to look and listen, before undertaking to pass in front of an electric car, constitutes negligence, is a question of fact while the failure to do so in attempting to pass in front of a steam car, is a matter of law. Our court has directly passed upon this distinction with respect to the duty imposed upon one approaching the crossing of steam and electric railroad tracks, in *Fairbanks* v. *Railway Co.*, 95 Maine, 78, and *Warren* v. *Railway Co.*, 95 Maine, 115; but the question is now so distinctly raised anew and becomes so material in determining the rights of the parties in this case, that a more extended consideration may also be proper. The defendant claims as a matter of law that the plaintiff should have looked and listened immediately before going upon the crossing, but both of the cases last cited in the 95th Maine hold to the contrary, and the weight of authority and the soundness of reasoning are, also, clearly the other way. This question was sharply raised in a recent Massachusetts case, *Robbins* v. *Springfield St. Ry.*, 165 Mass. 30. The defendant requested the judge to give the following instruction: "If the plaintiff failed to look and listen, when by looking and listening, he could have perceived the approach of the car, and the plaintiff drove in front of the car, and such failure to look and listen contributed directly to his injuries, then he cannot recover, and the verdict should be for the defendant." The judge refused to give the instruction. Chief Justice Field, in passing upon

the ruling of the court said: "The question of the due care of the plaintiff and of the negligence of the defendant's servants, we think, were for the jury on the evidence which appears in the exceptions." He then holds, alluding directly to the above request, that, "the third request could not properly have been given as an absolute rule of law. The decisions of this court show that a distinction has been taken with respect to the duty to look and listen, when crossing the tracks of a steam railroad where a railroad train has the exclusive right of way, and when crossing the tracks of a street railway company in the public street where the cars have not an exclusive right of way, but are run in the street in common with other vehicles and travelers. The fact that the power used by the street railway company is electricity instead of that of horses, has not been deemed by the court sufficient to make the rule of law which has been laid down concerning the crossing of the track of a steam railroad exactly applicable to a street railway." In *Hall* v. *West End St. Ry.*, 168 Mass. 461, the court say: "There is no absolute rule of law that, to be in the exercise of due care, one about to cross a public street must look and listen for approaching vehicles," and cite *Robbins* v. *Springfield St. Ry.*, supra. In this case the verdict was directed for the defendant because, under the peculiar circumstances, the inference of fact was conclusive that the plaintiff's failure to look and listen constituted negligence and contributed to the accident. Again it is held in *Benjamin* v. *Holyoke St. Ry. Co.*, 160 Mass. 4, that "the court rightly refused to instruct the jury that a mere failure to look would prevent her from recovering. This has been so held even in cases of collision, 55 Am. St. Rep. 629. *Shapleigh* v. *Wyman*, 134 Mass. 118, *French* v. *Taunton Branch Railroad*, 116 Mass. 537. This question was left to the jury with proper instructions."

In *Hall* v. *Ogden City St. Ry. Co.*, 13 Utah, 243, 57 Am. St. Rep. 733, it is held: "Persons traveling on the public street along or across the street railway track are not held to the exercise of the same degree of care and precaution as they are when traveling along or upon or across an ordinary steam road."

In *Consolidated Traction Co.* v. *Scott*, 58 N. J. L. 682, 55 Am. St. Rep. 629, we find the rule stated in this way: "It may be said

with reference to this request to charge, that the proposition that one, to be in the exercise of due care, must look and listen before crossing a steam railway, is well established, but this duty does not apply with equal force to one crossing the track of a street railway."

*Wendall et al.* v. *N. Y. C. & H. R. Co.*, 91 N. Y. 429, holds: "The rules of conduct which should govern the approach of travelers to crossing over street railways or in the track of vehicles whose rate of progress is under the control of their drivers, are necessarily quite different from those applicable to the crossing of the track of steam railroads, whose trains traverse vast distances carrying great burdens and moving with a momentum necessarily destructive to bodies with which they come in contact." This case was against a steam railway company and the above quotation is employed to show the distinction between the rights and duties of steam and electric roads.

. It is said in *Evansville St. Ry. Co.* v. *Gentry*, 147 Ind. 408, 62 Am. St. Rep. 423: "The rules that govern as to the crossing of steam railroads by travelers upon the highway are not fully applicable to street railway crossings in cities. . . . The rule therefore, to stop and look and listen cannot apply as it does to a crossing on a steam railroad track."

In *White* v. *Worcester St. Ry.*, 167 Mass. 43, Mr. Justice Holmes, as late as 1896, stated the proposition in this way: "But we suppose that the request was intended to embody a statement of the rights of electric cars irrespective of practice and to put street railways on very nearly the footing of steam railroads. Whatever may be the law as to the latter, there is a great difference between the two cases. Electric cars are far more manageable and more quickly stopped than trains upon steam railroads."

The duty imposed upon street cars when approaching public street crossings also clearly shows that the same rule with respect to such crossings cannot be invoked for both electric and steam cars. The very fact that the law, as far as we have been able to discover almost universally holds that upon the approach of public street crossings, the rights of street cars and vehicles are equal, that neither has a paramount right over the other, necessarily modifies the rule applicable to the approach of steam car crossings.

If it was not incumbent upon the plaintiff, as a matter of law, to look and listen, what was the duty of the defendant to the plaintiff in the management of their car in approaching a public crossing in conjunction with the plaintiff? We can readily see, if the law gave the defendant an absolute right of way to the seclusion of all else like a steam car, and also required the plaintiff to look and listen, and if he saw a car coming, however far away, and was injured, make him guilty of negligence, and, if he did not see the car, make him guilty for not seeing it, that the defendant could run its cars at almost any rate of speed, however negligent, without being chargeable with liability, on account of necessary contributory negligence on the part of the plaintiff.

But under the above principles of law, applicable to the reasonable use of the highway by electric cars, and to the duty of travelers in their relations with them, we think the safe rule to lay down with respect to the management of electric or other motor cars at street crossings is this, that the motorman, when approaching a public street junction shall be held to anticipate that any person, approaching such junction from either side, may turn his team into it, and shall then exercise all due care and have his car under such control as to be able to stop it at the crossing if necessary to avoid an accident. This rule places upon the railroad using the highway, only that degree of care that is commensurate with public safety and with a reasonable use of the road. It is also well settled law. And it is proper to here observe that the decisions impose a special duty upon cars operated in the streets when approaching street crossings,—a duty which, instead of clothing them with the paramount rights conceded between crossings, places them upon an equal footing with other vehicles rightfully occupying the streets. In the great state of New York with its numerous cities and large towns, in which without doubt the necessity for rapid transit is as imperative as in any state in the Union, we find the distinction fully and clearly stated in the O'Neil case above cited. After the quotation above alluded to, finding, as to vehicles moving in the streets, that the railways have a paramount right to be exercised in a reasonable and prudent manner, the court then proceeds to define their rights upon approaching crossings in

this language: "But a railway crossing a street stands upon a different footing. The car has the right to cross and must cross the street and the vehicle has the right to cross and must cross the railroad track. Neither has a superior right to the other. The right of each must be exercised with due regard to the right of the other and the right of each must be exercised in a reasonable and careful manner so as not to unreasonably abridge or interfere with the right of the other."

*Driscoll* v. *West End St. Ry.*, 159 Mass. 142, involving an accident at a street crossing, also recognizes the difference between the privileges of street cars while moving along the streets and when approaching street crossings, and expressly differentiates *Commonwealth* v. *Temple*, 14 Gray, 69, relative to the rights of cars running between crossings. The court say: "Street railway companies under the decisions of *Commonwealth* v. *Temple*, 14 Gray, 69, in running their cars have certain rights in the streets different from those which belong to the drivers of ordinary vehicles, but none of these rights is directly involved in the case at bar," and then lay down the principle, "The drivers and conductors of street railway cars, whatever the motive power, have in general, the same rights and duties with reference to vehicles crossing their course, that the drivers of omnibusses have, for example, or the driver of any other vehicle has," and cite and adopt the O'Neill case in the 129th N. Y., supra, which specifically distinguishes the rights of cars at street crossings.

In *Richmond Ry. Co.* v. *Garthright*, 92 Va. 627, 53 Am. St. Rep. 844, it is held: "The people of a city and vehicles have the same right to pass along an intersecting street as the car has to go across it. The car has the right to cross and must cross the street; and vehicles and foot passengers have a right to cross and must cross the railroad track. Neither has a superior right to the other. *O'Neill* v. *Dry Dock, etc., R. R. Co.*, 129 N. Y. 125, 26 Am. St. Rep. 512; *Buhrens* v. *Dry Dock, etc., R. R. Co.*, 53 Hun. 571; affirmed, 125 N. Y. 702; *Chicago City Ry. Co.* v. *Young*, 62 Ill. 238; Booth on street railway law, sec. 304, and cases there cited. And it is gross negligence in a street railway company to overcrowd and load down

its cars with passengers beyond any reasonable and proper limit, and consequently not be able to control and stop them readily as they approach an intersecting street in case it may be necessary to do so to avert a collision or prevent an accident."

*Evers* v. *Pa. Traction Co.*, 176 Pa. State, 376, 53 Am. St. Rep. 674, holds: "The fact that more caution should be exercised in running over crossings than on the street-between them warrants no inference that the car can be run without caution except on approaching crossings. In the one case, rapid running is of itself evidence of negligence; in the other it is not. This case distinctly holds that it is negligence per se to run an electric car rapidly over a crossing.

*Buhrens* v. *Dry Dock Ry. Co.*, 53 Hun. 571 note; 25 Am. St. Rep. 477 note. "But at street crossings the right of the street railway to the street and its right to the use thereof, in respect to other vehicles, are precisely the same as those of such other vehicles."

*Anderson* v. *Minneapolis Ry. Co.*, 42 Minn. 490, 18 Am. St. Rep. 525, also holds: "The driver of a street car must be in a place and condition to exercise a reasonable degree of care and diligence in watching the street ahead of him so as to prevent collision and avoid injuries to pedestrians lawfully traveling thereon."

In *Evansville St. Ry. Co.* v. *Gentry*, 147 Indiana, 408, 62 Am. St. Rep. 423, it is held: "The street car therefore, ought to be under full control as it passes over the crossing and as said in *Cincinnati St. Ry. Co.* v. *Whitcomb*, 66 Fed. Rep. 915, it is not the law that persons crossing street railway tracks in the city are obliged to stop as well as look and listen before going over such tracks, unless there is some circumstance which would make it ordinarily prudent to do so." See also other authorities cited showing that the rules which must be observed in crossing the tracks of the steam railroads do not strictly apply to the crossing of electric or cable lines in cities.

In Joyce on Electric Law, section 589, we find the following: "An electric car has no paramount right of way over pedestrians or other vehicles at street crossings and the rights of each are equal." See also numerous cases cited in the note.

If it was the duty of the motorman, and we find that it was, to run his car in approaching a public crossing, at a rate of speed that

would enable him to have it under the degree of control prescribed by the above rules of law, then arises the first question of fact put in issue in this case. Did the motorman in approaching the crossing at which the plaintiff was injured, have his car under proper control or, e converso, was he running it at an unreasonable and negligent rate of speed? The undisputed evidence shows that the approach to this crossing was down a sharp grade, upon which the speed of the car would, from gravity alone, naturally be rapid. As before stated the testimony of the plaintiff's witnesses tend to show that the car was moving at a rate of 15 to 20 miles an hour, and this testimony seems to be corroborated by other evidence relative to the distance which the horse and cart were carried by the impact of the car, and the distance which the car traversed before it finally stopped. All this evidence is controverted by the defendant's witnesses, but a careful reading of the testimony, while it might leave the question of speed somewhat in doubt, nevertheless, warranted the jury in concluding that, under all the circumstances, the defendant's car in approaching the crossing was propelled at an unreasonable and dangerous rate of speed. "In determining whether the cause should go to the jury, we must give plaintiff the benefit of the most favorable view of his facts and of every reasonable inference therefrom. *Buck* v. *The People's St. Ry., etc., Co.,* 108 Mo. 186."

Upon this point, then, assuming that the finding of the jury was correct, arises the legal proposition, does an unreasonable rate of speed by a street car constitute negligence? Our courts have repeatedly held that the speed of a car is a fact from which negligence may be inferred, and that whether such speed in any particular case constituted negligence, was peculiarly a question for the determination of the jury.

In *Paul* v. *Ogden St. Ry. Co.,* 13 Utah, 243, 57 Am. St. Rep. 726, we find this principle: "Some courts hold that where speed is greater than that permitted by the ordinances, it is negligence per se, but the better rule and the one sustained by the weight of authority, appears to be that it is a circumstance from which negligence may be inferred and is always proper to be considered by the jury in determining the question whether or not the railway company was guilty of negligence."

In *Birmingham Co.* v. *City Stable Co.*, 119 Ala. 615, 72 Am. St. Rep. 957, the court say, "But if he had a right to drive on the track for the purpose of crossing it at this particular place, then it became their duty, not only to keep a lookout to observe him but also to run the car at such a rate of speed on approaching the place and to retain such control over it as to be able to bring it to a full stop before striking the horse." In *Newark Passenger Railway Co.* v. *Block*, 55 N. J. L. 614, in the court below, the defendants requested the judge to rule in effect that they had a right to run their cars through the streets at a high rate of speed, to accomplish the object of "rapid transit," and that it was the duty of other occupants of the street, at their peril, to keep out of the way of a moving car, and the court held: "It is a proposition applicable to a crossing the highway by the lines of a steam railroad. It is inapplicable to the crossing of the street railway, the cars on which must not exceed such speed as will permit the lawful customary use of the highway by others with reasonable safety."

But it is unnecessary to cite further decisions upon this point. Not only all the authorities, but good common sense invoke such to be the law. We therefore must let the verdict of the jury stand with respect to the rate of speed at which the defendants were running their car in approaching the crossing at the time of the collision, causing the accident to which the plaintiff attributes his injuries.

The only remaining question to be determined is whether the plaintiff, under the circumstances in this case, in attempting to pass over the crossing as he did, was guilty of contributory negligence. We have already seen that he was not required, as a matter of law, to look and listen. The question therefore now arises whether, as a matter of fact, under all the testimony, the exercise of ordinary care and prudence required him to do so, otherwise than the undisputed testimony shows he did, at a distance of 20 feet from the track? Upon this point, the defendant's contention is that, "if the plaintiff looked at all when 20 feet away from the crossing, he looked carelessly and failed to see what was in plain sight. There can be no legal difference between negligence in the manner of looking and negligence in not looking at all." This may be a correct proposition

of abstract law, but it does not fully apply to the facts in this case. Whether the plaintiff was negligent, if he looked and did not see, was a question of fact, depending upon the measure of the duty devolving upon him to see. If this had been a steam road it would undoubtedly have been the duty of the plaintiff to have observed the track to the fullest extent of the view to see if a train was coming, because ordinary care in such a case requires it, the degree of care on his part being commensurate with degree of danger incident to the irresistible degree of speed and momentum acquired by steam cars when in motion. In like manner the degree of care to be observed by the plaintiff in crossing the defendant's track at the street junction is to be measured by the correlative duty of the electric car in approaching the same junction. But we have already determined that a car in approaching a crossing has only the same rights as other vehicles and must be under control. Hence, as a corollary of this proposition, the plaintiff had a right to rely upon the assumption that the defendant would discharge its legal duty in approaching the crossing by having their car under control, and such assumption is embraced within the rule of ordinary care in its application to the plaintiff's duty. Under this rule, the plaintiff was not necessarily required to look the whole length of the visible track to see if a car was coming, but along the track far enough to warrant an ordinarily careful and prudent man, having in mind his own safety, under like circumstances, to conclude that no car was in such proximity, if properly managed, as to endanger his safety in crossing. *Hill* v. *West End St. Ry.*, 158 Mass. 458.

The decisions amply sustain this position. *Newark Passenger Railway Co.* v. *Black*, 55 N. J. L. 605, is a case in which the relative rights and duties of a street railroad in operating its cars in the streets and of other occupants of the street, are fully discussed and carefully considered. The decision arose upon the following request: "If the jury believe the account of the plaintiff and her witnesses as to the fact that one car stopped at Prince street and passed the other below that street, it was the duty of plaintiff to wait long enough before crossing to allow the down car to pass far enough for her to see whether another car was coming and if she neglected that duty

she was guilty of contributory negligence and cannot recover, although the jury may believe that the up car was going at an unusual rate of speed, the track being straight and the car visible far enough to avoid it at any possible speed." The judge declined to give this request otherwise than he had already done and exceptions were taken. The court then proceeds to say. "The contention of plaintiff in error rather takes this shape. It asserts that its cars, propelled by electricity, are capable of being run at greater speed than other vehicles in the highway, and that the public convenience demands for passengers carried in such cars what is called "rapid transit", and it draws the inference that its cars may therefore be run at such speed as will satisfy this public demand, and that other persons lawfully using the highway in the customary modes must govern themselves and use the highway accordingly. Judicial opinions have been cited to us which appear to support these extraordinary propositions. I am unable to subscribe to the notion which, carried to its logical conclusion, would permit this company and other companies running cars in public highways, propelled by electricity, cables, etc., to run at any rate of speed which they may deem a demand, undefined and unrecognized by law to require.

" But the request before us brings into question the extent to which one crossing the roadway on foot must extend his observation. Its claim is that such observation must be extended to any approaching car, no matter how distant. But this is obviously an exaggerated notion of the duty required. The most prudent man would never suppose himself required to thus observe. If such rule of duty were adopted and practiced in a crowded city, the crossing of many streets would be barred to pedestrians for a great part of the time. The general rule to which we have recurred does not justify this excessive view of the duty required. It will require one crossing the roadway on foot to extend his observation only to the distance within which vehicles proceeding at customary and reasonably safe speed would threaten his safety."

" Prudence doubtless requires one about to cross a railroad track to use his eyes to observe any approaching car within his vision. But, as has been shown, prudence does not require one crossing the

track of a street railway to extend his observation to the whole line of track within his vision, but only to such distance as, assuming the required care in their management, approaching cars would imperil his crossing."

While the last two paragraphs apply particularly to pedestrians we think that they are equally applicable to the duty devolving upon teams, in their use of the streets in connection with electric or other motor cars, or, as, expressed in the opinion, upon "persons lawfully using the highway in the customary modes." In fact the opinion quoted bases its discussion of the principle therein ennunciated upon the relative rights of cars using the streets and of "persons lawfully using the highway in the customary modes," which of course embraces both teams and pedestrians. Under these rules of law governing the duty of the plaintiff, was he, in crossing the defendant's tracks, under all the circumstances involved, as a matter of law, guilty of contributory negligence; or was the question, whether his conduct on that occasion constituted contributory negligence, one of fact for the jury? The plaintiff testifies as to what he did with respect to the exercise of care in looking for the car as follows:

Q. Did you allow your eye that day as you looked back, to travel back as far as you could see at your point of the view? A. That I could not say, I know I looked back to see if there was a car coming,—I know I looked back beyond Mrs. Morse's. The undisputed evidence shows that the Morse house referred to was 244 feet from the crossing. Another witness testifies positively, that at the time the plaintiff was making a turn to cross the track into Williams Avenue, the electric car was just coming by the end of the Morse house, as the evidence shows 244 feet away.

The motorman testified as follows:

Q. When did you observe Mr. Marden turning to cross. A. When I was most to the Avenue. Q. How far? Between 40 or 50 feet, somewhere along there. Q. How near was Mr. Marden's team to the rails when he made the turn or attempted to make the turn? A. Five feet. Q. Did Mr. Marden at any time from the top of the hill until he made the turn to Williams Avenue, drive his horse to the other side of the road? A. I did not see him do

that.  Q.  Did Mr. Marden or anybody else look out from the front end of the cart back towards the car?  A.  No sir.  Q.  Was the rear end of the cart closed or open?  A.  Closed.  Q.  Was the cart entirely covered or an open cart?  A.  Entirely covered.  Q. When Mr. Marden turned his horse to cross the track, what did you do?  A.  I set up my brakes as hard as I could."  And this, as far as the evidence shows, was the first act on the part of the motorman towards any effort to check the car so as to have it under control at the crossing?

Can the court say, under the law applicable to the duty respectively resting upon cars and teams in approaching a street junction, that it was negligence per se, for the plaintiff to undertake to cross the car track into another street when the track was clear for a distance of 244 feet?  We think it cannot.  We think it was a question for the jury to determine.  If the jury believed, as they might, that the plaintiff, 20 feet therefrom, looked up the track a sufficient distance to discover whether a car was in such close proximity as to imperil his crossing the track, and, discovering none, undertook to cross, they well might find that the plaintiff was not guilty of contributory negligence, and that the failure of the motorman to apply the brakes until within 40 feet of the accident, was a clear case of negligence.

*Driscoll* v. *West End St. Ry.*, 159 Mass. 146, already cited is a case, which, in many of its elements is not unlike the case at bar. The court say:  "In the present case, we think the question of due care on the part of the plaintiff and of the defendant's servants, were for the jury.  One circumstance to be considered is that the plaintiff's horse was across the defendant's track at the time the wagon was hit.  When two vehicles are approaching at reasonable rates of speed on converging lines, the question arises as to which should gfve way, one circumstance to be considered is, which, according to the rates of speed they are going, will first reach the point where the lines of travel cross each other.  The plaintiff's testimony is that the car was nearly 400 feet from him when he proceeded to cross Hanover street diagonally to Elm street.  It seems to have been daylight and although it does not appear when the driver of the car first saw

the plaintiff, no reason appears why he should not have seen him long before he applied the brakes. The evidence was that he put on the brakes five or ten seconds before the collision and when the front of the car was about twenty feet from the plaintiff. It was the duty of the driver of the car to keep a reasonable lookout for teams coming from cross streets and reasonable control of his car so as to avoid collision and we think that there was evidence for the jury that this was not done. Neither can we say that there was not evidence for the jury that the plaintiff was in the exercise of due care. Apparently, if the speed of the car had been seasonably checked, the collision would have been avoided, and the danger was not immediate when the plaintiff undertook to cross the track."

This case, we think, is fully applicable to the one at bar. In this case the motorman was running his car down a sharp grade in plain daylight, having the plaintiff in view all the time, approaching the crossing of a street at this time "considerably used for vehicles" as the evidence shows, charged with the duty of anticipating that the plaintiff might turn into the Avenue, as he did, and of having his car under control, and yet he did not set the brakes for the purpose of controlling his car until within 40 feet of the crossing. We feel inclined to affirm of this conduct what was said in the last case cited, "Apparently if the speed of the car had been seasonably checked the collision would have been avoided, and the danger was not immediate when the plaintiff undertook to cross the track."

*Motion overruled.   Judgment on the verdict.*